Patrick M. Flatley
United States Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| PATRICIA GAIL MCDADE, | ) | Case No. 15-bk-52 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| _____ | ) | |
| | ) | |
| PATRICIA GAIL MCDADE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 15-ap-27 |
| | ) | |
| DIRECT SUBSIDIZED | ) | |
| CONSOLIDATION LOAN, et. al., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

The Department of Education ("DOE") seeks summary judgment on the complaint filed against it by Patricia Gail McDade because it asserts McDade owes educational loans which are presumptively nondischargeable under § 523(a)(8) of the Bankruptcy Code and McDade cannot meet her burden to overcome that presumption. McDade argues that summary judgment is not appropriate because she will face an undue hardship if her student loan debt is not discharged. She alleges that she cannot maintain a minimal standard of living while making repayments, that such condition will continue for the foreseeable future, and that despite good faith efforts to repay her debts, these conditions will not change.

For the reasons stated herein, the Court will grant summary judgment to the DOE and dismiss McDade's complaint against it.

1

## I.   BACKGROUND

On January 23, 2015, McDade filed her petition seeking Chapter 7 bankruptcy relief.  She then filed her complaint initiating this adversary proceeding on August 14, 2015.  She received a discharge in her Chapter 7 case while this adversary proceeding remained unresolved on August 25, 2015.  On October 25, 2015, she then filed a second bankruptcy petition, this time seeking Chapter 13 relief.  Confirmation of McDade's Chapter 13 plan has been held in abeyance pending the resolution of this adversary proceeding.[1]

McDade is a 46-year-old finance and business administrator for the West Virginia University School of Dentistry.  She currently lives with and supports her teenage son and adult daughter.  She obtained a Bachelor's degree and Master's degree in public administration from West Virginia University in 1995 and 1999, respectively.  In order to fund her education, she borrowed money through the William D. Ford Federal Direct Loan Program and also borrowed money for her children's education.  Those obligations now total $333,423.85 in outstanding principal and interest.  As of December 15, 2016, the balance owed to the DOE broke down as follows: $6,013.35 for loans related to the education of her children and $327,410.50 for her own education.

On January 23, 2015, when McDade filed her Chapter 7 petition, her income was scheduled at $2,905.94 and monthly expenses at $2,904.92.  Between January 23, 2015 and November 25, 2015, however, both her income and expenses increased considerably.  McDade's most recent schedules I and J, as amended on November 25, 2015, in her Chapter 13 case, list her monthly net income at $3,979.33 and her household expenses at $3,493.08.  The change in her income and expenses resulted in an increase in her net monthly income after expenses from $1.02 a month to $486.25 a month.  Her Amended Schedule J shows that each month McDade pays $1,050 in rent, $478.60 in utility costs, $750 in household supplies and food, $30 for clothing and related costs, $50 for personal care, $128 for medical and dental expenses, $200 for transportation-related expenses, $19.86 for life insurance, $75.80 for health insurance, and $152 for car insurance.  She also donates $525 to charity each month.  She did not schedule her monthly car payment which is

---

[1] This adversary proceeding stems from the Chapter 7 bankruptcy case, however the final determination as to whether McDade is obligated to repay her student loan obligations impacts the amount that needs to be paid through her Chapter 13 plan.  Notably, McDade is not eligible to receive a discharge of debts in her Chapter 13 case.

an additional $486.25, and that, in essence, constitutes the proposed Chapter 13 plan payment. Including that expense, McDade's monthly income and expenses are identical. Additionally, McDade did not list any student loan payments on Schedule J or provide for them in the proposed Chapter 13 plan.

Although McDade is currently employed full-time, she suffers from a number of ailments. Specifically, she has diabetes and chronic pain, both of which require medications, however, she remains capable of working. Her condition is chronic, although her pain is currently in remission. Moreover, she will be on pain medication and medication for diabetes for the rest of her life. However, because she is currently capable of working, relief is not available to her under the DOE's Total and Permanent Disability discharge provisions.

As a business administrator for the West Virginia University School of Dentistry, McDade receives an annual salary of $63,000. She recently was transferred to this position, at which time she received a pay raise. Despite the salary increase, McDade transferred departments and positions unwillingly. However, McDade was informed that her position would be eliminated on July 1, 2017 due to budgetary constraints. The Court is unaware what changes, if any, have occurred regarding McDade's employment. Notably, McDade has not amended her Schedule I in her Chapter 13 case or otherwise notified the court of any change in her employment or financial circumstances.

Although McDade is not currently enrolled in the DOE's Income Contingent Repayment Plan, she is eligible to participate in the program. If McDade elected to participate in the program, at her current income, she would be obligated to pay approximately $480 per month.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure ("Rule") 56, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is only appropriate if the movant demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment must make a prima facie case by showing: first, the apparent absence of any genuine dispute of material fact; and second, the movant's entitlement to judgment as a matter of law on the basis of undisputed facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the burden of proof to establish that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Demonstrating an absence of any genuine

dispute as to any material fact satisfies this burden. *Id.* at 323. Material facts are those necessary to establish the elements of the cause of action. *Anderson*, 477 U.S. at 248. Thus, the existence of a factual dispute is material – thereby precluding summary judgment – only if the disputed fact is determinative of the outcome under applicable law. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). A movant is entitled to judgment as a matter of law if "the record as a whole could not lead a rational trier of fact to find for the non-movant." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (citation omitted); *see also Anderson*, 477 U.S. at 248.

If the moving party shows that there is no genuine dispute of material fact, the non-moving party must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial. *Celotex Corp.*, 477 U.S. at 322-23. The court is required to view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Shaw*, 13 F.3d at 798. However, the court's role is not "to weigh the evidence and determine the truth of the matter [but to] determine whether there is a need for a trial." *Anderson*, 477 U.S. at 249-50. Nor should the court make credibility determinations. *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). If no genuine issue of material fact exists, the court has a duty to prevent claims and defenses not supported in fact from proceeding to trial. *Celotex Corp.*, 477 U.S. at 317, 323-24.

### III.   ANALYSIS

The DOE argues that McDade is unable to demonstrate that repaying her student loans subjects her to an undue hardship. Specifically, DOE notes that McDade is employed, has recently obtained a raise in salary, and has an advanced degree; thus, to the extent she was experiencing an undue hardship, it likely will not continue into the future. Finally, the DOE asserts that McDade failed to make a good faith effort to repay her loans by refusing to utilize the flexible repayment terms offered by the DOE to its borrowers.

In response, McDade alleges that her student loan repayment obligation subjects her to an undue hardship because her income is insufficient to cover her expenses and the sheer amount of her student loan obligation justifies the conclusion that denying discharge of this debt will result in an undue hardship. She further asserts that she has several medical conditions that cause her to frequently miss work and may create problems for her in the future. She also asserts that she has made good faith efforts to repay her debts from May 1995 to January 2015. Finally, she argues that the amount of monthly interest alone produces a feeling of hopelessness. Alternatively,

McDade argues that, even if her student loan debts are nondischargeable, the accrued interest should be discharged because interest is not a debt obtained for an educational benefit.

***i.        Undue Hardship***

Generally, student loans are nondischargeable in bankruptcy. 11 U.S.C. § 523(a)(8). However, a debtor may discharge debts resulting from a loan made for an educational benefit if excepting such debt from discharge would impose an undue hardship on the debtor and the debtor's dependents. 11 U.S.C. § 523(a)(8). By generally excepting student loans from discharge, Congress intended to eliminate debtor abuse of educational loans and to prevent abuse of the bankruptcy system. *Pa. Higher Educ. Assistance Agency v. Faish* (*In re Faish*), 72 F.3d 298, 302 (3d Cir. 1995) (citing *In re Pelkowski*, 990 F.2d 737, 744 (3d Cir. 1993)).

In order to discharge student loan obligations, a debtor must prove by a preponderance of the evidence that repayment will cause an undue hardship. *Educ. Credit Mgmt. Corp. v. Mosko* (*In re Mosko*), 515 F.3d 319, 323 (4th Cir. 2008). Repayment causes an undue hardship when "(1) [t]he debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living if forced to repay the loans; (2) [t]here are indications that the state of affairs is likely to persist for a significant portion of the repayment period; and (3) [t]he debtor made good faith efforts to repay the loans." *Educ. Credit. Mgmt. Corp. v. Frushour (In re Frushour)*, 433 F.3d 393, 401 (4th Cir. 2005) (citing *Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987)). "If one of the requirements of the *Brunner* Test is not met, the bankruptcy court's inquiry must end there, with a finding of no dischargeability," *Davis v. Educ. Credit Mgmnt. Corp., (In re Davis)*, 373 B.R. 241, 245 (W.D.N.Y. 2007), and "[t]he other prongs of the *Brunner* Test should not be examined if the first prong (unable to maintain a minimal standard of living) has not been satisfied." *In re Faish*, 72 F.3d at 305.

Regarding the first *Brunner* factor, a debtor must show more than merely tight finances, which almost all bankrupt debtors experience. *In re Faish*, 72 F.3d at 306. Rather, "the legislative history of § 523(a)(8) suggests a finding of undue hardship is an exception to the rule, and it must mean more than unpleasantness associated with repayment of a just debt." *In re Greene*, 484 B.R. 98, 108 (Bankr. E.D. Va. 2012) (internal citations omitted). To determine whether an undue hardship exists, courts first "determine what is 'minimally necessary' for the debtor's needs." *Velarde v. Educ. Credit Mgmt. Corp. (In re Velarde)*, Case No. 08-15794-SSM, 2009 LEXIS 2403, at *10 (Bankr. E.D. Va. Aug. 23, 2009).

Courts examining this factor have concluded that expenses related to the support of emancipated children, expenses related to cable, and even religious contributions all exceed the scope of expenses minimally necessary to meet basic needs. *Perkins v. Pennsylvania Higher Ed. Assistance Agency (In re Perkins)*, 318 B.R. 300, 305-06 (Bankr. M.D.N.C 2004) (compiling cases where expenses were characterized as beyond the scope of those minimally necessary). Courts examine the reasonableness of the expenses listed in the debtor's budget and determine if the debtor is able to maximize income and minimize expenses. *Id.* at 305.

Here, McDade earns a gross salary of $63,000 a year, resulting in net income of $3,979.33 per month. Her income is therefore much greater than the median household income for West Virginia residents ($41,751). However, she does support a family of three, including her adult daughter. Her monthly budget includes charitable contributions of $525, a $486 car payment, $1,050 for rent, $750 for food and housekeeping supplies, and $182.60 for telecommunication services. These expenses alone, particularly the $486 car expense for a 2014 Jeep Patriot and $525 charitable contribution, make it clear that McDade maintains at least a minimal standard of living.[2] Moreover, the record indicates that she supports an adult child, thereby unnecessarily increasing her monthly household expenses.[3] Notably, McDade asserts that her standard of living is minimal because she is unable to purchase a home or build wealth. However, her argument misses the mark; while it may be a worthy goal to build wealth, it is not necessary or required to do so in order to maintain a minimal standard of living.

Furthermore, the changes in McDade's expenses, as seen by comparing her Chapter 7 Schedule J from January 23, 2015 to her Chapter 13 amended Schedule J filed on November 25, 2015, demonstrate a significant increase in monthly spending. For instance, McDade moved to a new residence which increased her rent from $725 to $1,050 a month. Her utilities and expenses associated with food and housekeeping also increased drastically, as did expenses associated with transportation. She also stepped up her charitable contributions. All of these increases in expenses coincided with an increase in monthly income. Although not demonstrated by the record, it is

---

[2] The court is not asserting that McDade must eliminate these expenses. Rather, it looks to these expenditures as examples contradicting McDade's assertion that she is unable to maintain a minimal standard of living.

[3] There is nothing in the record that demonstrates the necessity of support for an adult child who presumably should be capable of supporting herself or contributing to the household income.

possible, perhaps even likely, that part of the rise in expenses reflected an increased cost-of-living; however, it is unlikely and unsupported by the record, that McDade's twenty percent increase in expenses in ten months' time resulted entirely from an increased cost-of-living.  The fact that McDade increased, rather than decreased, her expenses further indicates that she enjoys at least a minimal standard of living.

Although McDade fears that she will soon loser her job due to budget constraints at WVU, the relevant analysis is of her current circumstances.  *Brunner*, 831 F.2d at 396 ("Predicating future income is . . . problematic.  Requiring evidence not only of current inability to pay but also of additional, exceptional circumstances, strongly suggestive of continuing inability to repay over an extended period of time, more reliably guarantees that the hardship presented is undue.").  In any event, McDade's high level of skills and education make it likely that she will find new employment if her current employment is terminated.  *Frushour*, 433 F.3d at 401.

McDade has not demonstrated that she is unable to maintain a minimal standard of living while repaying at least some portion of her student loans.  Because McDade failed to demonstrate that repayment of her student loans causes her to suffer a below-minimal standard of living, she cannot meet her burden that she will be subjected to an undue hardship if required to repay her education-related debts.  Because McDade failed to prove the first prong of the *Brunner* Test, further analysis of the additional prongs is unnecessary. Her education debts are nondischargeable.

ii.    ***Dischargeability of Interest on Nondischargeable Debts***

McDade argues that the accrued interest on her student loan debt should be discharged even if her educational loans are otherwise nondischargeable because the interest accrued does not reflect an educational expense.  Both the Supreme Court and the Fourth Circuit Court of Appeals held, however, that "absent a showing of undue hardship, a debtor's post-petition interest, like the debtor's principal student loan debt, is nondischargeable." *Educ. Credit Mgmt. Corp. v. Buchanan*, 276 B.R. 744, 749 (4th Cir. 2002); *Wheeler v. United States HHS* (*In re* Wheeler), Case. No. 99-11843, 2000 LEXIS 2060, 7 (Bankr. Dt. K.S. Jul. 10, 2000) (citing *Bruning v. United States*, 376 U.S. 358, 363 (1964).

Based upon the foregoing and the court's finding that McDade failed to meet her burden regarding the dischargeability of her student loans, the interest is likewise nondischargeable.

## IV.    CONCLUSION

Based upon the court's analysis herein, it will enter a separate order granting the DOE's motion for summary judgment and declaring McDade's debts to be nondischargeable.